IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RANDY SMITH,                          §
                                      §
                    Plaintiff,        §
                                      §  Civil Action No. 3:05-CV-1881-D
VS.                                   §
                                      §
JO ANNE B. BARNHART,                  §
COMMISSIONER OF                       §
SOCIAL SECURITY,                      §
                                      §
                    Defendant.        §

MEMORANDUM OPINION

Plaintiff Randy L. Smith ("Smith") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits under title II of the Act. The administrative law judge ("ALJ") found that Smith is not disabled because, although he cannot perform his past relevant work, he can perform other work existing in significant numbers in the national economy. For the reasons that follow, the court VACATES the Commissioner's decision and REMANDS this case for further proceedings.

I

Smith was born in April 1962, has a high school education with some college credits, and has previously worked as a customer service clerk, tax examining assistant, telephone cable installer, and self-employed pool cleaner. He applied for disability

insurance benefits in November 2002, contending that he became disabled in June 2000 due to cluster headaches and depression. His claim was denied initially and on reconsideration, and he requested and received a hearing before an ALJ.

The ALJ conducted hearings in April and September 2004 and denied Smith's claim. The ALJ concluded in a February 2005 decision that Smith is not disabled. He determined at step two of the five-step sequential process that Smith's headaches and depression are severe within the meaning of 20 C.F.R. § 404.1521 (2005). He determined at step three that, although Smith exhibits symptoms of Listing 12.04, his impairments are not sufficiently severe to meet or equal a listing in Appendix 1, Subpart P, Regulation No. 4. He determined at step four that Smith is unable to perform any of his past relevant work. The ALJ concluded at step five that Smith has the residual functional capacity ("RFC") to perform a significant range of medium work and that, although Smith cannot perform the full range of medium work, he can perform work that exists in significant numbers in the national economy and is therefore not disabled under the Act.

Smith sought review by the Appeals Council, which denied his request. The ALJ's decision thus became the final decision of the Commissioner, and Smith now seeks judicial review. In his appeal, Smith contends the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to consider all of

Smith's impairments in determining his RFC, (2) the ALJ failed to give due consideration to the opinions expressed by the treating physicians, (3) the ALJ failed to properly consider Smith's credibility, and (4) the Commissioner failed to establish the existence of other work that Smith can perform.

                                    II

    The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnote omitted).

    "The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)).  "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983)).  Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not fewer than 12 months.  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74.

- 4 -

The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2005). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians;

(3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history.  *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.*  Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.*  The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.  *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

A

Smith contends the ALJ did not consider the extent to which his headaches impact his ability to perform medium work.[1]  He notes

---

[1]Smith initially contends that the ALJ failed to consider all his impairments in determining his RFC.  He first argues that the ALJ omitted certain facts contained in an evaluation by J. Lawrence Muirhead, Ph.D.  Smith also maintains that, although the ALJ concluded that his depression resulted in a mild degree of limitation in activities of daily living, mild limitation in maintaining concentration, persistence, or pace, and one or two episodes of decomposition, in posing his hypothetical questions to the vocational expert, he did not ask the witness to consider these limitations.  The court does not rely on these arguments in deciding this appeal and expresses no opinion on their merit.

that the ALJ found that he has headaches that are "severe" within the meaning of the regulations. That is, according to the ALJ's opinion, Smith has cluster headaches that significantly limit his ability to perform basic work activities. *See* R. 27 (citing 20 C.F.R. § 404.1521; *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985); *Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe*, SSR 96-3p, 1996 WL 374181 (July 2, 1996). Smith maintains that the ALJ never indicated, however, to what extent these severe headaches impact Smith's ability to perform work-related activities, and that the ALJ merely concluded that Smith could perform medium work without explaining how the headaches would restrict him from performing work at that level or at greater levels of exertion. Smith thus posits that the ALJ failed to consider all his vocationally significant impairments, even those that the ALJ recognized exist.

The Commissioner responds that the ALJ did consider the impact of Smith's headaches because he determined that Smith could not climb ropes or ladders and should avoid working around hazardous machinery and outside in the sunlight. She reasons that, although the ALJ did not specifically state in his decision that these restrictions were in response to Smith's headaches, he properly assessed all of Smith's impairments because Smith testified at the hearing that the light hurts his eyes, and he reported to his

treating physicians that he experienced dizziness and blackouts associated with his headaches.

In his reply brief, Smith argues that the Commissioner has not established that the restrictions on climbing ropes and ladders and working around hazardous machinery and in the sunlight are the only ones that apply to someone who experiences severe, debilitating headaches.  Smith posits that, had the ALJ properly considered all his functional limitations, he would not have determined that Smith can perform a significant range of medium work.

B

Even if the ALJ's determination that Smith can perform a significant range of medium work is erroneous, the court cannot reverse the decision on this ground unless Smith is prejudiced by the error.  *See Ripley*, 67 F.3d at 557.  The ALJ found that Smith could lift up to 50 pounds occasionally and up to 25 pounds frequently, sit six hours out of an eight-hour workday, and stand/walk six hours out of an eight-hour workday, with the additional limitations that his work not involve climbing ropes or ladders, being around hazardous machines, or working outside in the sunlight.  Based on these limitations, the ALJ concluded that Smith has the RFC to perform a significant range of medium work, which is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c) (2005).  The ALJ also concluded

- 8 -

that, although Smith's additional limitations——i.e., the limitations on climbing, hazardous machinery, and sunlight——prevent him from performing the full range of medium work, he can nonetheless perform "work that exists in significant numbers in the national economy." R. 31. The ALJ stated that he based this determination on the testimony of the vocational expert ("VE").

At the hearing, the ALJ asked the VE to consider a hypothetical claimant with the same age, education, and past work as Smith. The ALJ's hypothetical assumed that the claimant had the RFC to lift 50 pounds occasionally, 25 pounds frequently, sit six hours per day, and stand or walk six hours per day, with the additional limitations that the claimant could not climb ladders or ropes, would have to avoid hazards, and would have to avoid working outside in sunlight. The hypothetical claimant also had the ability to understand, remember, and follow simple one, two, three-step instructions and complete repetitive tasks, but would be required to avoid complex instructions. The ALJ asked whether there were positions in the region or national economy that the hypothetical claimant could perform. The VE responded that the hypothetical claimant could not perform Smith's past relevant work. But he could perform the full range of unskilled sedentary occupations and approximately 75 percent of unskilled light occupations, although he would be precluded from performing approximately 90 percent of unskilled medium occupations.

The VE's conclusion that a hypothetical claimant with Smith's RFC, as determined by the ALJ, would be precluded from performing approximately 90 percent of unskilled medium work appears to contradict the ALJ's conclusion that Smith could perform a significant range of medium work. But even assuming *arguendo* that the ALJ's finding regarding Smith's ability to perform medium work is not supported by substantial evidence, Smith has not shown that this error prejudiced him. The VE testified that a hypothetical claimant with Smith's RFC, as determined by the ALJ, could perform the full range of unskilled sedentary work and approximately 75 percent of unskilled light work. The ALJ noted this in his decision and cited specific examples of unskilled sedentary and light work as the type Smith could perform. Provided the ALJ's determination of Smith's RFC is supported by substantial evidence, the ALJ was entitled to conclude that Smith is not disabled because there was substantial evidence at step five that Smith can perform a significant numbers of jobs in the national economy.

C

1

The ALJ did not consider all of Smith's limitations, however, when he determined Smith's RFC. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified." *Ripley*, 67 F.3d at 557

(footnote omitted).   Here, although the ALJ found that Smith has severe cluster headaches, he did not in determining Smith's RFC consider the extent to which the headaches would prevent Smith from completing a normal workday or workweek.

The record evidence demonstrates that Smith had a seven-year history of severe, debilitating cluster headaches.   Although at times Smith has experienced improvement due to medication, the headaches persist and can be as frequent as two to three times or more per week and can last several hours.   Smith is treated with heavy injections of Imitrex and with oxygen.   The medical records refer to Smith's headaches as "severe," R. 224, 266, 301, 363, and "debilitating," R. 149, 301, 302, 304, 312, 339.   And Imawati Budihardjo, M.D. ("Dr. Budihardjo") stated in a May 28, 2004 Physical Residual Functional Capacities Questionnaire ("PRFC Questionnaire") that Smith's impairments——i.e., headaches and depression——would likely require him to be absent from work due to the impairments or treatment about four days per month.   Although Dr. Budihardjo noted that he could not evaluate fully this matter, his selection of the frequency of about four days per month is the second most severe of the six responses listed on the PRFC Questionnaire.[2]   Thus although Smith may be able to perform

---

[2]As the court explains *infra* at § IV(B), the ALJ improperly rejected Dr. Budihardjo's opinion outright rather than consider it together with the other medical evidence to determine to what extent Smith's headaches would cause him to miss work.

sedentary or light work during much of the workweek, the evidence available to the ALJ demonstrates that Smith is incapacitated or at least unable to work while he is suffering from, or undergoing treatment for, an impairment, including a debilitating headache. In determining Smith's RFC, the ALJ did not fully and fairly develop the extent to which his impairments would cause him to be absent from work or unable to work for a period of time.

2

Smith has demonstrated that he was prejudiced by this error because, had the ALJ made a determination regarding Smith's ability to complete a normal workday or workweek, he might have concluded that Smith is disabled. *See Ripley*, 67 F.3d at 557 n.22 ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.") (citing *Kane*, 731 F.2d at 1220)).  At the hearing, the ALJ posed a second hypothetical to the VE, in which he asked the VE to assume that the claimant had all the same abilities and limitations as the person in the first hypothetical, with the additional limitation that the claimant would not have the ability to sustain an eight-hour workday or a 40-hour workweek and would have frequent absences due to medical problems.  The VE testified that this hypothetical claimant would be precluded from competitive employment due to issues such as attendance and absenteeism

concerns.  Thus once limitations on Smith's ability to sustain a full workday or workweek are included in the RFC, there is a question whether the Commissioner has established at step five that Smith is capable of performing work available in significant numbers in the national economy.

IV

Smith also contends that the ALJ failed to give due consideration to the opinions expressed by his treating physicians. He maintains that the ALJ improperly rejected the opinions of Dr. Budihardjo, Bettina Fehr, M.D., Anwarul Haq, M.D. ("Dr. Haq"), and Sean Milligan, M.D. ("Dr. Milligan").

A

The court first considers the opinions of Drs. Milligan and Haq.  Dr. Milligan, a physician at the Dallas Veterans Affairs Medical Center ("VA"), where Smith was treated, hand wrote an April 4, 2004 letter addressed "To Whom It May Concern."  Dr. Milligan stated that Smith "has been diagnosed with intractable chronic cluster headaches," and he opined that Smith "has been suffering with these for over seven years, and their severity is such that they are both physically and emotionally debilitating to the point that he is unable to maintain gainful employment."  R. 149.  Dr. Haq, a VA staff neurologist, completed an October 29, 2002 form on which he concluded that Smith was "NOT ABLE TO WORK" due to his cluster headaches.  *Id.* at 288.  Smith alleges that the ALJ failed

- 13 -

to consider Drs. Milligan's and Haq's opinions and did not provide a basis for rejecting the opinions.

"[T]he opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Normally, absent other reliable medical evidence from a treating or examining physician controverting the treating physician's opinion, the ALJ must consider each of the six factors set out in 20 C.F.R. § 404.1527(d)(2) (2005) prior to rejecting the treating physician's opinion. *Id.* at 453. The ALJ may assign a treating physician's opinion little or no weight, however, when the opinion is conclusory. *See id.* at 455. The ALJ must consider the six factors only with respect to treating physicians' *medical* opinions, and a determination that a claimant is disabled or unable to work is a *legal* conclusion reserved to the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam).

Dr. Milligan's statement that Smith is "unable to maintain gainful employment," R. 149, and Dr. Haq's statement that Smith is not able to work are legal conclusions reserved to the Commissioner, not medical opinions entitled to deference. Accordingly, assuming that the ALJ rejected or did not give great weight to these opinions, he did not reversibly err in doing so.

B

The ALJ rejected the opinion of Dr. Budihardjo, who reported in a May 28, 2004 PRFC Questionnaire that Smith has episodes of severe debilitating cluster headaches, that he was being treated by the Neurology Department for his headaches and by the Mental Health Department for depression, and estimated that Smith's impairments would require him to be absent from work about four days per month (although he noted that he could not evaluate this fully). The ALJ rejected Dr. Budihardjo's opinion on the basis that this physician did not treat Smith for his cluster headaches. R. 29 ("I reject the opinion in exhibit 7F. The doctor's opinion appears to rely in part on an assessment of an impairment(s) for which the claimant received no treatment from that doctor.").

Smith posits that Dr. Budihardjo was a treating physician because he treated Smith on November 21, 2003 and in March 2004. But Dr. Budihardjo noted in the PRFC Questionnaire that he did not treat Smith for his cluster headaches.[3] Rather, for a period of several years, several other VA physicians treated Smith for his headaches. Although Smith primarily obtained medical care at the VA, he did not necessarily see the same physician each time. Instead, he saw doctors in the Neurology Department for his

---

[3]Although it is not clear from the record, it could be that Dr. Budihardjo did not consider himself to be the treating physician because he was a resident, not an attending, physician. [R. 364]

headaches, psychologists in the Mental Health Department for his depression, and staff physicians or residents for other ailments. It appears that, in responding to the PRFC Questionnaire, Dr. Budihardjo compiled information from the reports of several physicians to generate his opinion.

The rationale for affording great weight to the medical opinion of a treating physician is that he is most "familiar with the claimant's impairments, treatments[,] and responses." *Newton*, 209 F.3d at 455.  Because Dr. Budihardjo did not treat Smith for his cluster headaches, the ALJ was not required to give the doctor's opinion great weight.  *See id.*

This is not necessarily a reason, however, to reject the opinion altogether.  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id.* (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).  But neither the ALJ's decision nor the Commissioner's brief directs the court to substantial medical evidence that is inconsistent with Dr. Budihardjo's opinion that Smith's cluster headaches would cause him to be absent from work perhaps 20 percent of the time.[4]  On remand, when the ALJ determines the extent to which Smith's headaches impact his ability to complete a normal workday or workweek, the ALJ should consider Dr. Budihardjo's opinion with the remaining

---

[4]Assuming there are on average approximately 22 workdays per month, a person who is absent four days misses work about 20 percent of the time.

medical evidence.   The ALJ is not required to give the opinion great weight and is free to reject it if the evidence supports a contrary conclusion, but he cannot reject it solely on the ground that Dr. Budihardjo is not a treating physician.

V

Because the ALJ failed to develop the facts fully and fairly in determining Smith's RFC, the court concludes that the decision that Smith can perform work generally available in the national economy is not supported by substantial evidence.   Smith has demonstrated that he was prejudiced by this error.   Accordingly, the Commissioner's decision must be vacated.

Smith raises other issues on appeal, but the court does not address them because the Commissioner's decision on remand may render them moot.   On remand, however, the ALJ is free to revisit these issues in his decision.

*     *     *

The Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for further proceedings consistent with this memorandum opinion.

July 11, 2006.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 17 -